**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.:15-cv-60481-WPD**

REGINALD R. LOCKHART, an individual, on
behalf of himself and all others similarly situated,

Plaintiff,

vs.

**CLASS ACTION**

REAL TIME RESOLUTIONS, INC.,
a Texas corporation,

Defendant.
_______________________________________/

**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

Plaintiff, Reginald R. Lockhart, an individual, on behalf of himself and all others similarly situated ("Class Representative"), pursuant to Rule 23, Federal Rules of Civil Procedure, by and through his undersigned attorney ("Class Counsel"), hereby respectfully moves this Honorable Court for an order granting final approval of the Class Action Settlement Agreement in this matter, and in support would show as follows:

1. In the instant action, the Class Representative filed a Complaint against Defendant, Real Time Resolutions, Inc., a Texas corporation ("RTR"), asserting that RTR violated the requirements of 15 U.S.C. §1692, *et sequi*, known more commonly as the "Fair Debt Collection Practices Act" ("FDCPA"), which prohibits debt collectors from engaging in abusive, deceptive and unfair practices. In particular, the Class Representative alleged *inter alia* that Defendant violated the requirements of 15 U.S.C. §1692g by failing to provide complete and accurate mandated disclosures.

2. After extensive settlement negotiations, including mediation conducted before Charles N. Tetunic, Esquire, on August 27, 2015, the parties reached a Class Action Settlement Agreement ("Settlement Agreement"), a copy of which has been previously filed with the Court.

3. On August 10, 2016, this Court entered a Preliminarily Approval Order of the Class Action Settlement [DE 32], and subsequent Order Clarifying Order Granting Preliminary Approval of Class Action Settlement entered August 12, 2016 [DE 34] (hereinafter collectively "Preliminary Approval Order").

4. In support of the instant application, the Class Representative has filed the following declarations/affidavits:

(a) Affidavit of Robert Jindra, Assistant Director of Operations for Garden City Group, LLC, Regarding Settlement Administration ("Settlement Administrator Report"), and

(b) Declaration of Robert W. Murphy, Esquire ("Class Counsel Declaration").

5. As detailed below, the Settlement Agreement is fair, reasonable and provides substantial benefits to the Class and should be given final approval by this Court in all respects.

## MEMORANDUM OF LAW

## I. INTRODUCTION

### *A. Procedural History*

The Complaint of the Class Representative alleges that in the course of collecting a debt purportedly owed on a home equity loan, RTR violated the FDCPA by failing to provide complete and accurate disclosures required by 15 U.S.C. §1692g, including the identity of the creditor to whom the debt was owed and the amount of the debt in a manner which was not reasonably calculated to confuse or frustrate the least sophisticated consumer, in contravention of 15 U.S.C. §1692g.

Class Counsel conducted a substantial investigation as to the factual and legal merits of the action. The Parties have fully researched the legal issues raised by this case prior to settlement. The Parties engaged in settlement negotiations that lasted several weeks. In conjunction with these negotiations, the Parties exchanged information and documents relevant to the discussions. Through this process, the Class Representative acquired sufficient knowledge and information to adequately assess the merits of the settlement. After reaching a settlement in principle, the Parties negotiated the detailed final terms of the proposed Settlement Agreement now before the Court.

### *B. Terms of Settlement*

Pursuant to the Settlement Agreement, the Parties have stipulated for settlement purposes only as follows:

Settlement Class. The Settlement Class consists of:

All persons within the United States (i) with whom Real Time Resolutions, Inc. communicated with but failed to disclose the amount of the debt being collected and to whom the debt was owed as required under 15 U.S.C. §1692g(a); (ii) in an attempt to collect a debt which, according to the nature of the creditor or the debt, was incurred for personal, family or household purposes; and (iii) from February 1, 2013 to the date of certification of the class [Settlement Agreement - ¶ 39].

Payments to Class Members. RTR will provide monetary relief to Class Members, as follows:

Within thirty (30) days after entry of the Final Order, Real Time will establish a fund with the Settlement Administrator totaling Twenty-Two Thousand Five Hundred Dollars ($22,500.00) ("Class Fund"). Each Class Member who does not exclude himself or herself from the Class and

timely submits a claim form shall receive a check for his or her *pro rata* share of the Class Fund ("Settlement Check"). Any person who timely and effectively requests exclusion from the Settlement shall not be entitled to a Settlement Check. Under no circumstances will any Class Member receive more than a single Settlement Check for statutory damages. Settlement checks to the Class Members shall expire for one-hundred eighty (180) days from the date that they are issued. To the extent that there are any funds from un-cashed, expired Settlement Checks, an amount equal to the amount of such uncashed Settlement Checks will be paid over as a *cy pres* award to Class Counsel to be distributed to the National Legal Aid and Public Defender Association, 1901 Pennsylvania Avenue, Suite 500, Washington, D.C. 20006 [Settlement Agreement - ¶ 40].

Real Time shall also pay the sum of Three Thousand Six Hundred Dollars ($3,600.00) to the Class Representative as an incentive fee. This amount shall be separate and apart from the Class Fund [Settlement Agreement ¶ 41].

**Costs of Settlement Administration.** Real Time agrees to pay the reasonable Settlement Administration Costs and Expenses, which includes providing class notice and distribution of settlement funds [Settlement Agreement ¶ 43.3].

**Attorney's Fees, Costs and Expenses.** The reasonable attorney's fees and costs for Class Counsel shall be paid by Real Time in an amount to be determined by the Court at the time of final approval [Settlement Agreement - ¶¶ 42.1-42.2]. Pursuant to negotiations after preliminary approval, Real Time has agreed to pay Thirty-Eight Thousand Dollars ($38,000.00) in attorney's fees and costs to Class Counsel, subject to Court approval.

### *C. Details of Settlement Administration*

Pursuant to the directives of the Preliminary Approval Order, the Settlement Administrator

was directed to mail the Class Notice by first class mail to the Class Members at their last known address. The Class Representative has filed the Settlement Administrator Report contemporaneously herewith which details the Settlement Administration process.

Pursuant to the Preliminary Approval Order, notice was mailed ("Initial Mailing") to 29,392 Class Members by first class mail, postage prepaid, forwarding service requested [Settlement Administrator Report - ¶7]. As of October 11, 2016, a total of 50 notices with forwarding address information were returned to the Settlement Administrator and promptly remailed to the updated addresses provided. As of October 11, 3016, a total of 3,846 notices were returned as undeliverable with no forwarding address or further information provided by the United States Postal Service [Settlement Administrator Report - ¶8].

Pursuant to the Settlement Administrator Report, the Settlement Administrator stated the following concerning its administration:

- Objections - No objections were received as of October 11, 2016 [Settlement Administrator Report - ¶16].
- Exclusions - As of October 11, 2016, the Settlement Administrator received 6 timely requests for exclusion and 2 untimely requests for exclusion. A list of the timely excluded persons is attached to the Settlement Administrator's Report as Exhibit E [Settlement Administrator Report - ¶16].
- Claims Received - As of October 11, 2016, the Settlement Administrator received 1,215 timely claim forms for Class Members [Settlement Administrator Report - ¶¶ 14-15].

## II. STANDARD OF REVIEW OF CLASS ACTION SETTLEMENTS

Courts consistently favor settlement of disputed claims. *See Williams v. First National Bank*, 216 U.S. 582 (1910); *Weinberg v. Kendrick*, 698 F.2d 61, 73 (2d Cir.1982); *DuPuy v. Director, Officer of Worker's Compensation Programs*, 519 F.2d 536,541 (7th Cir.1975), *cert. denied*, 424 U.S.965 (1976). Nowhere is this policy more appropriate than in class actions:

> In the class action context in particular, "there is an overriding public interest in favor of settlement." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir.1977). Settlement of the complex disputes often involved in class actions minimizes the litigation expense of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources. Id.

*See Armstrong v. Board of School Directors*, 616 F.2d 305, 313 (7th Cir.1980); *see also, Franks v. Kroger,* 649 F.2d 1216, 1224 (6th Cir.1981) *vacated on other grounds and modified*, 670 F.2d 71 (6th Cir.1982) (law generally favors and encourages the settlement of class actions); *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 307 (7th Cir.1985) *on reh'g, en banc, Secy of Labor v. Fitzsimmons,* 805 F.2d 682 (7th Cir.1986); *Patterson v. Stovall*, 528 F.2d 108, 112 (7th Cir.1976); *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.,* 137 F.R.D. 240, 246 (S.D. Ohio 1990); *In re Dun & Bradstreet Credit Service Consumer Litigation,* 130 F.R.D. 366, 371 (S.D. Ohio1990); *In re Domestic Air Transportation Antitrust Litigation,* 148 F.R.D.297, 312 (N.D.Ga.1993) ("settlements of class actions are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits").

In reviewing a proposed settlement, courts should neither substitute their own judgment for that of the parties who negotiated the settlement, nor "reopen and enter into negotiations with the litigants in the hopes of improving the terms of the settlement." *See In re Saxon Securities Litigation,* [1985-86 Transfer Binder] Fed.Sec.L. Rep. (CCH) ¶92,414 at 92,525 (quoting *Argo v. Harris,* 84

F.R.D.646, 647-48 (E.D.N.Y.1979) ); *see also Enterprise Energy, supra,* 137 F.R.D. at 246 (settlement must be viewed in its entirety and court may not modify individual terms which were the product of negotiations).

As stated by the court in *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 462 (2d Cir.1974):

> It is not necessary in order to determine whether an agreement of settlement and compromise shall be approved that the court try the case which is before it for settlement … Such procedure would emasculate the very purpose for which settlements are made. The court is only called upon to consider and weigh the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable.

In lieu of a more extended inquiry into the claims asserted, courts have concentrated on the "negotiating process by which the settlement was reached." *Weinberger v. Kendrick,* 698 F.2d 61, 74 (2d Cir. 1982). Courts have thus focused on whether the settlement was achieved through "arm's length negotiations" by counsel who have "the experience and ability … necessary to [provide] effective representation of the Class's interests." Id.*; see also Stotts v. Memphis Fire Department,* 679 F.2d 541, 551 (6th Cir.1982); *Granada Investments, Inc. v. DWG Corp.,* 823 F.Supp. 448, 454 (N.D.Ohio1993) (citing importance of arm's length negotiations); *Spencer v. Comserv Corp.,* [1986-87 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶93,124 at 95,530 (D.Minn.1986); *In re Warner Communications Securities Litigation,* 618 F. Supp.735, 741 (S.D.N.Y. 1985), *aff'd*, 798 F.2d35 (2d Cir.1986).

In deciding whether to approve the proposed settlement, this Court must determine whether the proposal is fair, adequate and reasonable. *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984); *Gautreaux v. Pierce,* 690 F.2d 616, 631 (7th Cir.1982); *In re Domestic Air Transportation Antitrust Litigation, supra,* 148 F.R.D. at 312. *See also Toledo Fair Housing Ctr. v. Nationwide Mut. Ins. Co.,* 94 Ohio Misc.2d 186, 188 (Lucas Co.1998); *Beder v. Cleveland Browns, Inc.,* 758 N.E.2d

307, 114 Ohio Misc.2d 26 (2001).

"[T]here is a strong initial presumption that the compromise is fair and reasonable." *In re Saxon Securities Litigation, supra*, ¶92,414 (quoting *Katz v. E.L.I. Computer Systems, Inc.*, [1970-71 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶92,994 at 90,676 (S.D.N.Y. 1971)). Accordingly, courts exercise restraint in examining a proposed settlement and recognize that "[s]ettlements, by definition, are compromises which need not satisfy every single concern of the plaintiff class, but may fall anywhere within a broad range of upper and lower limits." *In re Saxon Securities Litigation, supra*, ¶92,414 at 92,525 (quoting *Alliance to End Repression v. City of Chicago,* 561 F.Supp. 537, 548 (N.D.Ill.1982)).

An assessment of the fairness, reasonableness and adequacy of a proposed settlement herein requires the court to weigh numerous factors. In this regard, it has been noted:

> It is well established that the court assumes a limited role when requested to approve a class action settlement proposal. While the interests of the class members must be carefully protected … the Court must avoid deciding or trying to decide the likely outcome of a trial on the merits. Approval or disapproval is dependent upon whether, under all of the particular circumstances, the terms reached are fair, reasonable and adequate.

*See In re National Student Marketing Litigation,* 68 F.R.D. 151, 155 (D.D.C.1974) (citations omitted).

## III. LEGAL ARGUMENT

### A. Notice to the Settlement Class Has Satisfied the Requirements of Rule 23(c)(2)(B), Federal Rules of Civil Procedure and Constitutional Due Process Requirements.

#### *1. The Form and Content of the Class Notice Satisfied the Requirements of Rule 23(c)(2)(B)*

Pursuant to the Federal Rule of Civil Procedure 23(b)(3), the best notice practicable under the circumstances must be sent to apprise class members of the pendency of the suit and advising

them of their right to opt-out under Rule 23(c). The rule further requires that the notice for a (b)(3) class concisely and clearly state in plain, easily understood language *inter alia* the nature of the action, the definition of the class certified, the right to exclude and object, and the binding effect of the class judgment. Fed.R.Civ.P. 23(c)(2)(B).

In the instant action, through the Preliminary Approval Order, the Court approved the form and content of the Class Notice [DE 34]. The Class Notice informed the Class Members of the material terms of the settlement as well as the right of the Class Members to opt out, intervene or object to the Class Action Settlement. Accordingly, it is the position of Class Counsel that the content and form of the Notice to the members of the Class satisfies the requirements of Rule 23(c)(2)(B).

*2. The Best Notice Practicable Has Been Sent to the Members of the Class.*

Rule 23(c)(2) requires "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." When a potential class member's address is known or is readily available with reasonable effort, individual notice by mail is required. *Eisen v. Carlyle & Jacquelyn*, 417 U.S. 156, 173 (1974).

Rule 23 does not require the parties to exhaust every conceivable method of identifying and providing notice to the individual class members. *Burns v. Elrod*, 757 F.2d 151, 154 (7th Cir.1985). As detailed in the Settlement Administrator Report, the Settlement Administrator followed its standard practice of processing the Class List through CASS and NCOA Services to obtain the best possible addresses for the Class Members prior to mail out [Settlement Administrator Report - ¶4-5].

Accordingly, in light of the modest settlement benefits, "the best notice practicable" has been made by Defendant. This position is especially compelling as certain of the dunning letters which

are the subject matter of this litigation may not have been received by Members of the Class in the first place. *In Re: Prudential Insurance Co. of America Sales Practices Litigation*, 177 F.R.D. 216, 239 (D. N.J. 1997)[“that some class members may not have received notice evidences only that the extensive notice system was not perfect. Due process when viewed through the lens of objectivity does not require perfection”]; *Grunin v. International House of Pancakes,* 513 F.2d 114 (8th Cir. 1975)[in antitrust class action, notice adequate where one third of class not reached by mail].

### B. The Proposed Settlement is Fair, Adequate and Reasonable

#### *1. Federal Law Supports Approval of Class Action Settlement Agreements That Are Fair, Adequate and Reasonable.*

Judicial approval of class action settlements requires a two-step process. In the first step, the court makes a preliminary determination as to whether the settlement falls "within the range of possible judicial approval." *H. Newberg, Newberg on Class Actions* (3d Ed. 1993) §11.25, p.11-37. Once the settlement is found to be within the range of possible approval, a final approval hearing is scheduled and notice is provided to the class. Id. The second step involves final determination, following a hearing at which pertinent evidence and any objections by class members may be considered, that the settlement is fair, reasonable and adequate from the standpoint of the class. Id. at §11.41.

*In Warren v. City of Tampa*, 693 F. Supp. 1051 (M.D. Fla. 1988), *aff'd*, 893 F.2d 347 (11th Cir. 1989), the District Court for the Middle District of Florida described review of class action settlements as follows:

> The Court initially recognizes the principal that settlements are highly favored in the law. Miller v. Republic National Life Insurance Company, 559 F.2d 426 (5th Cir. 1977). The Court is required to make a two-part determination that: 1) there is no fraud or collusion

> in reaching settlement, and 2) the settlement is fair, adequate and reasonable. Bennett v. Behring Corp., 737 F.2d 982 (11th Cir. 1984).

Id. at 1054

The evaluation of whether a settlement is fair, reasonable and adequate is committed to the sound discretion of the trial court. *Bennett*, 737 F. 2d at 987. In making this determination, the trial court is entitled to rely upon the judgment of experienced counsel for the parties. *Behrens v. Wometco*, 118 F.R.D. 534, 538 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

In lieu of a more extended inquiry into the claims asserted, courts have concentrated on the negotiating process by which the settlement was reached. *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982), *corrected on other grounds on pet. for reh'g*, [1982-1983 Transfer Binder] Fed. Sec. L. Rep. (CCH) 99,074 (2d Cir.) *cert. denied* 464 U.S. 818 (1983). The courts insist that a settlement be the result of "arm's length negotiations" effected by counsel possessed of "experience and ability . . . necessary to effective representation of the class' interests." Id. 698 F.2d at 74 (citation omitted). Once counsel's experience is established, courts give such counsel's "opinion . . . supporting the settlement . . . 'considerable weight' ". *In re: Saxon Securities Litigation, supra*, [1985-1986 Transfer Binder] Fed. Sec. L. Rep. (CCH) 92,414, at 92,525 (S.D.N.Y. 1985). This is because "the parties' counsel are best able to weigh the relative strengths and weaknesses of their arguments." Id.

In determining whether a proposed settlement is fair, adequate and reasonable, this Court should consider the following seven factors:

(1) the likelihood of success or recovery;

(2) the range of possible recovery;

(3) the settlement terms and conditions, and how the terms compare with the possible range of discovery;

(4) the complexity, expense and duration of future litigation;

(5) the substance and amount of any opposition to the settlement;

(6) the stage of the proceedings at which settlement is reached;

(7) the recommendations and judgment of experienced counsel and the absence of collusion.

*Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *Andrews v. Ocean Reef Club, Inc.*, 1993 WL 563622, *3 (Fla. Cir. Ct. 1993). Application of these factors shows that the proposed settlement is fair, adequate, reasonable and in the best interest of the Settlement Class.

2. *Even With a Strong Factual and Legal Case, Class Members Face a Significant Risk in Establishing Liability and Damages.*

At the onset of litigation, RTR argued *inter alia* that the failure of RTR to provide a compliant disclosure under 15 U.S.C. §1692g was obviated by a prior collector providing such a notice. The case law on this salient issue was unsettled at the appellate level until the Ninth Circuit on July 20, 2016 ruled in *Hernandez v. Williams, Zinman & Parham, P.C.*, ____ 3d ____, 2016 WL 3913445 (9th Cir. 2016). In *Hernandez*, the court held that as a matter of first impresion, the validation notice required by the FDCPA after the "initial communication" must be sent anew by each debt collector, first or subsequent, that attempted to collect a debt. Id. at *3913449.

Although the Class Representative believes that the claims he has raised are meritorious, the Class Representative recognizes that ultimate success on the merits is by no means assured. During the initial part of this litigation, RTR has made clear that if this matter were contested, it would vigorously challenge the merits of the claims of the Class Representative. RTR has also contended and continues to contend that it has meritorious defenses to the asserted claims [Settlement Agreement - p. 2].

### 3. *The Settlement Terms and Conditions Offer Substantial Benefit to All Settlement Members*

Benefit to the Settlement Class is the fundamental test of the reasonableness of a settlement. Under 15 U.S.C. §1692k(2)(B)(ii), the recovery of the Class is limited to the lessor of $500,000.00 or 1% of the net worth of the debt collector. Hence, the settlement benefits are extremely modest in FDCPA cases.

Each Class Member who has not timely excluded himself or herself from the settlement ("Participating Class Member") will receive a Settlement Check in the approximate amount of Seventy-Eight and 51/100ths Dollars ($78.51) from the Settlement Administrator. The recovery is within the range of other similar FDCPA statutory class actions. *Compare, Klewinowski v. MFP, Inc.*, 2014 WL 1418263 (M.D. Fla. 2014) [*cy pres* award of $17,758.20; no cash payment to class]; *Narvaez v. Law Offices of Antonio Duarte, III, P.A.*, 2015 WL 4605756 (M.D. Fla. 2015) [settlement fund of $6,000.00]; *Bellows v. NCO Financial Systems, Inc.*, 2008 WL 5458986 (S.D. Cal. 2008); *Beecher v. Abel*, 441 F.Supp. 426, 429 (S.D. N.Y. 1977).

As a salient example, in the case of *Bellows v. NCO Financial Systems*, the United States District Court for the Southern District of California granted final approval of a nationwide FDCPA class action. Under the terms of the settlement agreement, the debt collector was required to establish a settlement fund of Nine Hundred Fifty Thousand Dollars ($950,000.00), from which Class Members had the right to make a claim to receive a Seventy Dollar ($70.00) settlement check. Id at *7. After publishing the notice in USA Today, only 29 claim forms were submitted to the settlement administrator. Id. at 4. Notwithstanding the small number of claim forms submitted by class members, the Court nonetheless granted final approval holding that "where a much smaller number of claims were made in the class action than expected, '[i] in such circumstances, the

settlement agreement should not lightly be set aside nearly because subsequent developments have indicated that the bargain is more beneficial to one side than to the other." Id.*8, quoting from *Beecher v. Abel*, 441 F.Supp. 426, 429 (S.D. N.Y. 1977).

*4. The Time and Expense of Protracted Litigation Makes Settlement Appropriate.*

Settlement promotes the interests of the litigants by saving them the expense of trial of disputed issues and reduces the strain on already overburdened courts. *See, Armstrong, supra,* 616 F.2d at 313; *Newman v. Stein,* 464 F. 2d 689, 691-92 (2d Cir.)*, cert. denied, sub nom.; Benson v. Newman,* 409 U.S. 1039 (1972*); Enterprise Energy, supra,* 137 F.R.D. at 247-48 (class action settlement serves interests of both litigants and public by avoiding a time-consuming trial and appeal). This position is especially compelling in light of the modest recovery available under FDCPA for statutory damages. *See*, 15 U.S.C. §1692k(a)(2)(B) [limitation of recovery to the lessor of $500,000.00 or 1% of net worth of debt collector].

*5. There is No Opposition to the Proposed Settlement.*

As noted above, the Settlement Class received notice of the proposed settlement by first class mail. In response to this notice program, no objections have been raised and only six (6) Class Members have opted-out. Based upon the nearly unanimous favorable response to the proposed settlement, there exists no reason to delay final approval.

*6. Class Counsel Has Conducted Due Diligence and Has Negotiated the Settlement From a Well-Informed Perspective.*

In the several months since this class action was initiated, the parties have developed substantial appreciation for the merits of their respective positions before reaching an agreement as to settlement. The Class Representative has conducted formal and informal discovery, including the exchange of documentation relating to numerosity and the net worth of RTR.

The settlement discussions were successfully concluded at mediation before a skilled mediator. Once the general terms of the settlement were reached, the parties continued to negotiate the specific provisions and language of the agreement over the next several weeks.

*7. Class Counsel Believes That the Settlement is Fair, Reasonable and in the Best Interests of Settlement Class Members.*

The opinion of experienced class action counsel with substantial experience in litigation of similar size and scope is an important consideration. *See, Leverso v. SouthTrust Bank of Ala., N.A.,* 18 F.3d 1527, 1530 (11th Cir. 1994)*; In re Domestic Air Transportation Antitrust Litigation, supra,* 148 F.R.D. at 312; *Andrews v. Ocean Reef Club, Inc.*, 1993 WL 563622, *3 (Fla. Cir. Ct. 1993). In the instant action, Class Counsel has significant experience in litigating consumer class actions. *See*, e.g., *Haney v. Bainbridge Campus Circle Apts., LLC*, 2016 WL 3258378 (N.D. Fla. 2016); *Picchi v. World Financial Network Bank*, 2015 WL 1201396 (S.D. Fla. 2015); *Smith v. Toyota Motor Credit Corp.,* 2013 WL 1325460 (D. Md. 2013); *Brown v. SCI Funeral Services of Florida, Inc.*, 212 F.R.D. 602 (S.D.Fla.2003); *Baez v. Wagner & Hunt, P.A.*, 442 F.Supp. 2d 1273 (S.D. Fla. 2006); *Tyrell v. Robert Kaye & Associates, P.A.*, 223 F.R.D. 686 (S.D. Fla. 2004). At the final approval hearing, Class Counsel will inform the Court of settlements obtained in other FDCPA class actions similar to the instant proceeding. Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel. *See, Ressler v. Jacobson,* 822 F.Supp. 1551, 1553 (M.D.Fla.1992).[1]

[1] The Court must also avoid judging the settlement against a hypothetical or speculative measure of what might have been achieved by the negotiators. "Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of facts and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlement." *See, Officers for Justice v. Civil Serv.Comm'n,* 688 F.2d 615, 625 (9th Cir.1982).

"While the opinion and recommendation of experience counsel is not blindly followed by the trial court, such opinion should be given great weight in evaluating the proposed settlement." *Flinn v. FMC Corp.,* 528 F.2d 1169, 1173 (4th Cir.1975). "Where experienced counsel have engaged in arm's length negotiations to reach a settlement, the trial court is entitled to rely on their judgment." *Spencer, supra,* ¶93,124 at 95,530; *see also Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)(court should defer to judgment of experienced counsel who has competently evaluated the strength of his proofs); *Enterprise Energy, supra,* 137 F.R.D. at 247 (endorsement of settlement by experienced counsel supported fairness, adequacy and reasonableness of settlement); *Ohio Public Interest Campaign v. Fisher Foods,* 546 F.Supp.1, 11 (N.D.Ohio1982) (opinion of counsel to be given great weight by the Court). Indeed, there is a "strong initial presumption" that an arm's length settlement arrived at by experienced counsel, and premised upon sufficient information to evaluate the claims at issue is fair. *See Feder v. Harrington,* 58 F.R.D. 171 (S.D.N.Y.1972).

Here, the settlement is the product of extensive, adversarial, arm's length negotiations conduct by counsel experienced in all aspects of class action litigation, and particularly experienced in the FDCPA context. As discussed above, the proposed settlement offers the Settlement Class a substantial portion of the relief sought and which could be obtained at trial. Thus, in counsels' view, the proposed settlement is fair, reasonable and in the best interest of the Settlement Class.

By reaching the proposed settlement, the parties have dispensed with the need for further protracted litigation. Upon final approval, if given, the proposed settlement will have established a significantly faster and guaranteed favorable resolution of Settlement Class Members' claims against RTR.

8. *The Parties Negotiated the Proposed Settlement in Good Faith.*

This lawsuit has been pending for over 1½ years. The proposed settlement was negotiated at arm's length, after several weeks of negotiation, and additional, detailed settlement negotiations were conducted before the final terms of the Settlement Agreement were reached. Thus, there is not even a hint of bad faith or collusion surrounding the proposed settlement to undermine its fairness or adequacy. *See, e.g., Hemphill v. San Diego Ass'n of Realtors, Inc.,* 225 F.R.D. 616, 621 (S.D. Cal. 2004) ["the courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement"].

## IV. CONCLUSION

For all the foregoing reasons, Plaintiff, Reginald R. Lockhart, on behalf of himself and all others similarly situated, respectfully requests that this Court approve the settlement as fair, adequate and reasonable.

/s/ *Robert W. Murphy*
ROBERT W. MURPHY
Florida Bar No.:717223
1212 SE 2nd Avenue
Ft. Lauderdale, Florida 33316
Telephone: (954) 763-8660
Facsimile: (954)763-8607
Email:rwmurphy@lawfirmmurphy.com
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on October 13, 2016 on Cary A. Lubetsky, Esquire, c/o Krinzman, Huss & Lubetsky, 800 Brickell Avenue, Suite 1501, Miami, FL 33131; and to Mathew M. Wrenshall, Esquire, c/o Reed Smith, LLP, 355 S. Grand Avenue, Suite 2900, Los Angeles, CA 90071, in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.

/s/ *Robert W. Murphy*
Attorney